PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

DANIEL PASTOR (CABN 297948)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   FAX: (415) 436-7234
   daniel.pastor@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FREDERICK CARL GAESTEL,<br><br>Defendant. | NO. 23-CR-345-TLT-2<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Judge: Hon. Trina L. Thompson<br>Date:  March 28, 2025<br>Time:  10:00 A.M. |

**I.   INTRODUCTION**

Frederick Carl Gaestel (age 35) pleaded guilty to count one of the captioned indictment charging him with Conspiracy to Distribute a Mixture and Substance Containing Methamphetamine in September 2024. PSR ¶ 2. Gaestel was arrested at the stash house of the drug organization known as "The Shop" that supplied a broad range of controlled substances to customers across the San Francisco Bay Area. Gaestel worked for his co-defendant Natalie Gonzalez as a delivery driver who distributed methamphetamine pills and other drugs to customers that placed drug orders through the encrypted app Signal. The organization had a $300 minimum for Bay Area delivery orders and for mail orders.

Gonzalez explained to a DEA undercover agent that the group's customer base was "a lot of students and young professionals" and that the organization's drivers drove regular weekly drug delivery routes in different parts of the Bay Area. In his plea agreement, Gaestel admits that at the time of his arrest at the house on Henderson Place in Menlo Park, he was the only person staying there. Agents seized roughly 7 KG of cocaine, orange fake Adderall pills weighing roughly 1.7 KG, and roughly 1 KG of fentanyl that was found in a carry-on bag labeled "DO NOT OPEN".

## II.  SENTENCING GUIDELINES CALCULATIONS

As reflected in the Plea Agreement, the parties calculated the Sentencing Guidelines for Gaestel's offense as follows:

| | | | |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2D1.1(a)(5), (c)(4) (offense level 32) | 30[1] |
| b. | Minor Role Adjustment, U.S.S.G. § 3B1.2(b) | -2 |
| c. | Acceptance of Responsibility, U.S.S.G. § 3E1.1 | -3 |
| d. | Group Disposition Departure, § 5K2.0(a)(2)(B) | -2 |
| e. | Total Offense Level: | 23 |

*See* Dkt. 116 at 5; PSR ¶¶ 52-61 & n.1. The government agrees with U.S. Probation that the defendant has a Criminal History Category (CHC) of II. PSR ¶¶ 64-66. For offense level 23 and CHC II, the guidelines range is 51-63 months. PSR ¶ 96 n.1. Based on the offense level calculation in the plea agreement, the government agreed to recommend a sentence no higher than 51 months (Dkt. 116 at 8), unless the defendant violates the plea agreement or fails to accept responsibility.

## III.  DISCUSSION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Guidelines are "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

\\

---

[1] *See* U.S.S.G. § 2D1.1(a)(5) ("if (A) the defendant receives an adjustment under § 3B1.2 (Mitigating Role); and (B) the base offense level under subsection (c) is (i) level 32, decrease by 2 levels").

Section 3553(a) sets forth factors that the Court must consider in determining an appropriate sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991. Although the Guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007).

### A. The Offense – The "Door Dash" Drug Delivery Conspiracy

#### 1. The Shop Functioned as a Delivery Service for Illegal Drugs

"The Shop" functioned as a drug bazaar for her customer base—which Natalie Gonzalez described as "a lot of students and young professionals, who use them for work" (PSR ¶ 28). The group profited by distributing illegal drugs to these young-adult customers who it encouraged to order in bulk: "We have a $300 minimum order for postal shipments and Bay Area delivery." PSR ¶ 21. The group also profited by providing a steady flow of illegal drugs through convenient weekly deliveries made by the Shop's drivers (including Gaestel, Sestak, and Rickey) on regular routes throughout the Bay Area. The group marketed its illegal drug business as offering the convenience of familiar Silicon Valley order-and-delivery apps. It encouraged customers accepting drug deliveries to: "Hop in for a short 'Uber' ride around the block – Get your order through the window like Door Dash." *Id.* And similarly to weekly food delivery services, it reminded customers to: "Order by the night before relevant delivery day to receive your order"/ "SF deliveries are WEDNESDAY night 8-11p"/ "EAST BAY deliveries are THURSDAY night 8-11pm." *Id.*

#### 2. Gaestel Worked with Gonzalez as a Delivery Driver and Stash House Caretaker.

Gaestel made two drug deliveries of orange fake Adderall pills containing methamphetamine to a DEA undercover agent (UC) on June 14, 2023 and on July 26, 2023. On June 14, Gaestel met the UC in San Mateo County and sold him 1,000 orange pills for $2,500. PSR ¶ 25. The pills were later tested at a DEA lab and found to contain methamphetamine. PSR ¶ 27. On July 26, Gaestel again met the UC and sold him orange fake Adderall pills for $2,500. PSR ¶ 32.

On July 13, 2023 (a Thursday), agents observed Gonzalez and Gaestel at the stash house loading brown paper bags into the trunk of Gaestel's Subaru. PSR ¶ 29. Based on the Menu, which the UC received from the Shop (stating that the group made drug deliveries in the East Bay on Thursdays), agents believed that Gaestel would be driving the East Bay delivery route that day. *Id.* After 7:00 p.m., Gaestel drove away from the stash house in his Subaru and agents followed him to San Leandro, California where he parked on the street, retrieved something from his trunk, and then met with a woman to whom he handed a paper bag, and from whom he accepted cash in return. PSR ¶ 30.

On July 26, 2023, prior to the UC's purchase of orange pills from Gaestel, agents again observed Gonzalez visiting the Menlo Park stash house and bringing a large cardboard box from her van into the residence. PSR ¶ 31. While Gonzalez and Gaestel were inside the Menlo Park house, Gonzalez (Soter) messaged the UC on Signal: "Hey Friend! Our driver Franz will be delivering your order tonight in a white Subaru Forester with a cute black/white puppy – 1206 West Hillsdale Blvd - $2500 – 7:15-8pm." *Id.* Around 7:40 p.m. that evening, agents observed Gaestel leave the Menlo Park stash house with his dog and drive to the agreed location for the meeting with the UC. PSR ¶ 32.

### 3. Gaestel was Staying at the Organization's Stash House Where Large Quantities of Drugs were Seized.

When federal agents searched the Shop's stash house in Menlo Park, they found (among other drugs): (1) roughly 7 kilograms of cocaine in separately shaped bricks, (2) Ziploc bags full of orange pills stamped with the stamps of prescription Adderall medication weighing roughly 1,773 grams, and (3) bags of ketamine weighing roughly 12 kilograms. *See* PSR ¶¶ 43-44; Dkt. 116 at 3. The large drug quantities found at the group's stash house demonstrate the scale of the group's operation. The cocaine was tested at a DEA lab and confirmed to be cocaine with a net weight of roughly 6,997 grams. *Id.* The pills were tested at a DEA lab and found to contain methamphetamine (not Adderall). *See* PSR ¶ 44; Dkt. 116 at 3.

Agents also found a square brick labeled "fentanyl" that was found in a zipper-closed carry-on bag that was labeled "DO NOT OPEN" inside of a cardboard box labeled "DO NOT OPEN." PSR ¶ 43. The substance labeled fentanyl was tested at a DEA laboratory and found to be roughly 21% pure fentanyl with a weight of roughly 990 grams. *Id.*


**B. Other 3553 Factors**

The defendant told the Probation Officer that he had a good upbringing in which he was raised by both parents and had a good relationship with them. PSR ¶ 73. Gaestel's brother died as a teenager after struggling with substance abuse and encounters with the criminal justice system. *Id.* After leaving his home state of New Jersey in 2014, the defendant drifted around the country and was mostly homeless until February 2017. PSR ¶ 78. He was in jail and California state prison from February 2017 until his parole in September 2019. *Id.*

The defendant was convicted of first-degree robbery in Mendocino County in 2018 for conduct in 2016 (when he was age 27). PSR ¶ 64. He was sentenced to 3 years in state prison. *Id.* Gaestel was investigated as part of a homicide investigation that involved a dispute between people involved with Mendocino marijuana grows. *Id.* According to the sheriff's report about the incident, Gaestel allegedly knew of a plan to assault and rob the homicide victim and that he loaned his vehicle to the assailants. *Id.* The defendant claims that he loaned his vehicle to acquaintances who planned to use it to retrieve their belongings and seek payment for work they had performed for the victim. *Id.*

While on pretrial release in this case, Gaestel has tested negative for drugs (PSR ¶ 88) and has complied with his release terms (PSR ¶ 7). He is enrolled at Eastern Oregon University working toward a B.S. degree. PSR ¶ 88. He has worked for UPS as a part-time shift supervisor since October 2023. PSR ¶ 90. He purchased a house in Oregon in 2021 after completing his California parole. PSR ¶ 78.

**IV. CONCLUSION**

In accordance with the parties' plea agreement, the government respectfully recommends that the Court sentence Gaestel to 51 months in prison, 3 years of supervised release, and the terms and conditions of supervised release recommended by U.S. Probation.

DATED: March 19, 2025                               Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

/s/
DANIEL PASTOR
Assistant United States Attorney